FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 15 2010
P.M.
TIME A.M. ___

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
CHARLES STERGIOS,

               Petitioner,

– against –

UNITED STATES OF AMERICA,

               Respondent.
----------------------------------------------------------------- x

**MEMORANDUM and ORDER**

09-CV-5108 (SLT)

**TOWNES, United States District Judge**

In mid-November 2009, petitioner Charles Stergios filed an "Emergency Petition" for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, principally alleging that the Federal Bureau of Prisons ("BOP") failed to afford him due process before imposing sanctions for his escape from a halfway house. For the reasons set forth below, this Court concludes that petitioner failed to exhaust his administrative remedies and has been afforded due process. Petitioner's application for a writ of habeas corpus is, therefore, denied and this action is dismissed.

## BACKGROUND

On October 18, 2004, petitioner pled guilty before the Hon. George Z. Singal, then Chief Judge of the United States District Court for the District of Maine, to a three-count information charging him with wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and bank fraud (18 U.S.C. § 1344). On April 4, 2005, Judge Singal sentenced petitioner to three concurrent terms of 75 months' imprisonment. *See* Declaration of Kinda Flagg dated Dec. 14, 2009, Ex. 1. Although petitioner's judgment of conviction was amended on three subsequent occasions – in August 2005, November 2006, and January 2007 – the length of petitioner's sentence ultimately remained unchanged. *Id.*

Near the end of his term of imprisonment, petitioner was placed in the Community Corrections Center, a halfway house in Philadelphia, Pennsylvania. On August 9, 2009, petitioner allegedly failed to return to the facility, and was subsequently charged with "Escape from Unescorted Community Programs and Activities and Open Institutions (Minimum) and from Outside Secure Institutions – *without* violence." Declaration of Crista M. Colvin dated Dec. 15, 2009 ("Colvin Decl.") at ¶ 6 (emphasis in original). According to the government, the Community Discipline Committee ("CDC") at the halfway house held an in-absentia disciplinary hearing on August 19, 2009. *Id.* The CDC found that petitioner had, in fact, escaped and imposed the following sanctions: 1) disallowance of 13 days of good conduct time; 2) forfeiture of 60 days of non-vested good conduct time; and 3) the loss of commissary access, telephone use and visitation for nine months, to begin upon his return to custody. *Id.*

On or about August 28, 2009, petitioner was arrested and remanded to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *Id.* at ¶ 7. Petitioner was still there in mid-November 2009, when he commenced this action by filing a two-page, handwritten "Emergency Petition" for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Emergency Petition"). In that petition, petitioner alleged that the BOP violated his due process rights by "taking 73 days good time" without serving him with an incident report and without allowing him a "DHO hearing," an advocate, and the right to call witnesses on his behalf. Emergency Petition dated Nov. 10, 2009, at 1-2. Petitioner asserted that the BOP's actions violated a "1974 Supreme Court case" which held that "he ha[d] these rights." *Id.* at 2. In addition, petitioner challenged the forfeiture of 60 days of non-vested good conduct time, alleging that unspecified "Federal Courts have ruled [that] once earned, it can not be taken away." *Id.*

On November 24, 2009, this Court issued an Order to Show Cause, directing the United States Attorney for the Eastern District of New York to file a return on behalf of respondent within 20 days of the receipt of the order and directing petitioner to file his reply, if any, within 20 days of his receipt of the return. The United States Attorney timely complied with that order by filing a response on December 15, 2009. In that response, the government argues that the petition should be dismissed because 1) petitioner failed to exhaust his administrative remedies and 2) petitioner was provided due process. These arguments are discussed in detail below. Petitioner has yet to file a reply.

## *DISCUSSION*

### *Exhaustion of Administrative Remedies*

A federal prisoner who wishes to challenge disciplinary sanctions, including the loss of good conduct time, imposed by the Bureau of Prisons may do so by seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see also Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). However, federal prisoners must exhaust their administrative remedies prior to filing a § 2241 petition. *Carmona*, 243 F.3d at 634 (citing *Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir. 1979) (per curiam)).[1] A prisoner's failure to exhaust these remedies may be excused only upon a showing of "cause and prejudice." *Id.*

In this case, the government has adduced proof that petitioner failed to exhaust his administrative remedies. Specifically, the government has provided evidence that, while

---

[1]This requirement is based on Second Circuit "decisional law" and not, as the government asserts, on the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997a(e). *See Carmona*, 243 F.3d at 634.

3

petitioner filed several BP-10 forms contesting the sanctions imposed by the CDC, he never filed an appeal with the BOP's Office of General Counsel. *See* Colvin Decl. ¶¶ 15-20. Since "[n]o administrative remedy is deemed finally exhausted under the [BOP's] Administrative Remedy Program until considered by the Office of General Counsel," *id.* at ¶ 13, this evidence establishes that petitioner failed to exhaust his administrative remedies.

Petitioner, who has not filed a reply to the government's response, has not controverted the government's exhaustion argument. Petitioner has also made no attempt to show "cause and prejudice" sufficient to excuse his failure to exhaust. Accordingly, this Court will dismiss this action for failure to exhaust administrative remedies.

### *The Merits of Petitioner's Claims*

Even if petitioner had exhausted his administrative remedies or shown cause and prejudice with respect to his procedural default, this Court would still deny this action on the merits. This Court recognizes that petitioner was entitled to due process in connection with the forfeiture of his good conduct time. "[I]nmates have a liberty interest in good time credit they have already earned," *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000); *see Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974), and the Fifth Amendment to the United States Constitution provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ...." However, the government has adduced uncontroverted evidence that petitioner was afforded due process.

In the context of prison disciplinary hearings, due process typically requires that a prisoner be provided:

> advance written notice of the charges against him; a hearing
> affording him a reasonable opportunity to call witnesses and
> present documentary evidence; a fair and impartial hearing officer,
> and a written statement of the disposition, including the evidence
> relied upon and the reasons for the disciplinary actions taken.

*Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff*, 418 U.S. at 563-67). When an inmate escapes from custody, however, the BOP's regulations prescribe different procedures. Specifically, 28 C.F.R. § 541.17(d) (2009) requires:

> When an inmate escapes or is otherwise absent from custody, the
> Discipline Hearing Officer shall conduct a hearing in the inmate's
> absence at the institution in which the inmate was last confined.
> When an inmate returns to custody following absence during which
> sanctions were imposed by the DHO (or the predecessor Institution
> Discipline Committee (IDC)), the Warden shall have the charges
> reheard before the Discipline Hearing Officer ordinarily within 60
> days after the inmate's arrival at the institution to which the inmate
> is designated after return to custody, and following appearance
> before the Unit Discipline Committee at that institution. The UDC
> shall ensure that the inmate has all rights required for appearance
> before the Discipline Hearing Officer, including delivery of
> charge(s), advisement of the right to remain silent and other rights
> to be exercised before the Discipline Hearing Officer. All the
> applicable procedural requirements for hearings before the
> Discipline Hearing Officer apply to this rehearing, except that
> written statements of witnesses not readily available may be
> liberally used instead of in-person witnesses.

Because petitioner escaped from the Community Corrections Center, the procedures set forth in 28 C.F.R. § 541.17(d) were applicable. The government has introduced evidence that these procedures were followed. According to the Declaration of Crista M. Colvin, the CDC at the Community Corrections Center held an in-absentia disciplinary hearing on August 19, 2009. Colvin Decl. at ¶ 6. On December 7, 2009 – less than two weeks after petitioner arrived at his "designated" institution – the charges were re-heard by a DHO at that facility. *Id.* at ¶¶ 8-9.

Although the Colvin Declaration does not provide details regarding petitioner's December 7, 2009, appearance before the DHO, the Emergency Petition cannot be construed as challenging the procedures at the re-hearing. The Emergency Petition was filed in mid-November 2009, more than ten days before petitioner was transferred from MDC to the "designated" institution. Since petitioner had yet to reach the designated institution at the time he filed his Emergency Petition, that petition cannot be alleging that the UDC at that institution failed to perform its duty to "ensur[e] that the inmate has all rights required for appearance before the Discipline Hearing Officer." 28 C.F.R. § 541.17(d). Similarly, since the Emergency Petition was filed almost one month before the re-hearing, the petition cannot be challenging the DHO's actions at the re-hearing.

Rather, the Emergency Petition, construed in the light most favorable to the *pro se* petitioner, principally alleges that the BOP denied petitioner due process by failing to afford petitioner a timely re-hearing. However, this argument lacks merit for two reasons. First, as noted above, a re-hearing is required only after a re-captured escapee arrives "at the institution to which the inmate is designated after return to custody." 28 C.F.R. § 541.17(d). Petitioner had yet to reach that institution at the time he filed his Emergency Petition. Second, even if the MDC could be construed as the "designated" institution, the BOP's failure to afford petitioner a re-hearing within 60 days of his August 28, 2009, arrival at the MDC would not implicate due process concerns. 28 C.F.R. § 541.17(d) states only that the re-hearing should "ordinarily" be held within 60 days after the inmate's arrival at the designated institution, and "does not establish a definitive requirement for a hearing within sixty days." *Werner v. Bureau of Prisons*, No. 90 Civ. 4841 (LBS), 1991 WL 19989, at *2 (S.D.N.Y. Feb. 11, 1991). Accordingly, even if the re-

hearing was held outside the 60 days, it was not untimely and petitioner's due process rights were not violated. *See id.*

### *The Penalty Imposed*

Petitioner also implies that his rights were violated by the BOP's decision to forfeit 60 days of "earned" good conduct time, stating that "Federal Courts have ruled [that] once earned, [good conduct time] can not be taken away." Petition at 2. Petitioner does not cite to any cases in support of this argument and the government has not responded to it, presumably relying on the argument that petitioner has failed to exhaust this argument as well. Since this Court agrees that petitioner's arguments are procedurally barred, *see* pp. 3-4, *ante*, this Court need not address the merits of this argument.

However, this Court notes that even if this argument were not procedurally barred, it would lack merit. The BOP's regulations provide that permissible sanctions for an "[e]scape from unescorted Community Programs and activities and Open Institutions ... *without* violence" include the forfeiture of "earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less." 28 C.F.R. § 541.13, Table 3 (2009). The term "earned statutory good time" refers to good time credits awarded under 18 U.S.C. § 4161 – a statute which was repealed effective November 1, 1987. *See* 28 C.F.R. § 541.13, Table 4, ¶ 1(b). Since petitioner was not incarcerated as of that date, he had no "earned statutory good time" to forfeit.

Petitioner did, however, have "good conduct time," which was awarded pursuant to 18 U.S.C. § 3624, as interpreted by 28 C.F.R. § 523.20 (2009). Under 18 U.S.C. § 3624(b)(1):

> [A] prisoner who is serving a term of imprisonment of more than 1 year [,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the

7

> prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations ....

However, "credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act," 42 U.S.C. § 1997a(e), does not vest until "the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2). Since the Prison Litigation Reform Act was enacted in 1996, all of the good conduct time petitioner had accumulated in the course of his incarceration was "non-vested," and subject to forfeiture. *See* 28 C.F.R. § 541.13, Table 4, ¶ 1(b).

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied and this case is dismissed. Since petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability is granted with respect to petitioner's claims. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

/s/ SANDRA L. TOWNES
United States District Judge

Dated: January 13, 2010
Brooklyn, New York